UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRANDON HAHN,<br><br>Defendant. | CAUSE NO. 3:21-CR-22 DRL-MGG |

OPINION & ORDER

The government charged Brandon Hahn with unlawfully possessing a firearm as a felon. He seeks to suppress evidence, not least the firearm, obtained during a traffic stop. He says law enforcement lacked reasonable suspicion to stop and detain him and exceeded its authority in ordering him from his truck. The court held an evidentiary hearing on April 28, 2021. *See* Fed. R. Crim P. 12(d); *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). The government called one witness, Officer Keith Smith. The court now denies the motion to suppress.

FACTUAL FINDINGS

Just before 3:00 a.m. on October 14, 2020, Officer Keith Smith, a near six-year patrolman with the City of Peru Police Department, heard a "loud metallic scraping sound." The sound seemingly originated from a black Dodge Ram truck traveling north on business U.S. 31 into Peru, Indiana. Officer Smith observed the truck pull into the K-Mart parking lot across the street—naturally vacant given the hour of night. Finding this unusual, Officer Smith followed the vehicle.

The truck went around the K-Mart building and then proceeded west on West Canal Street, which later turned into West Old Stone Road. The truck visually appeared to be speeding. As the truck proceeded onto West Old Stone Road in a 40-mph zone, Officer Smith clocked the truck at 48 mph. The officer clocked him for about a quarter mile. The radar device had been calibrated at the start of

his shift at 11:00 p.m. the night before and rechecked about every half hour since then. Officer Smith activated his emergency lights. The truck traveled about 200-300 yards thereafter before turning into a home's driveway.

Two body camera videos squarely support Officer Smith's testimony. The driver, Brandon Hahn, promptly opened his door. Officer Smith observed the gentleman and an infant girl (about two or three years old). The girl wasn't secured in a child seat. Mr. Hahn showed Officer Smith the title to the truck and his license. He then told Officer Smith that the truck's license plate was registered to a different vehicle.

Officer Smith smelled marijuana emanating from the truck. He asked Mr. Hahn to exit the vehicle. Mr. Hahn explained that he lived at this house and that he had just picked up his daughter. Officer Smith asked him about the marijuana smell, and Mr. Hahn said there was no marijuana in the truck but that he had smoked marijuana earlier that day. Mr. Hahn admitted to having a pipe in the truck. Law enforcement later searched the truck and found a pipe and marijuana grinder with residue.

When Mr. Hahn exited the vehicle, he lifted his daughter across his lap and set her on the ground. A baby blanket fell from his hip revealing a loaded Taurus .380 pistol holstered on his right hip, near where he dragged his child across his lap. Officer Jeremy Brindle, who assisted Officer Smith during the stop, alerted Officer Smith to the firearm just before Mr. Hahn informed Officer Smith that he was armed. Mr. Hahn admitted not having a permit to carry the handgun and that he recently paid $150 for it to protect his home following an attempted home invasion. He was previously convicted of a felony (sexual misconduct with a minor in 2011).

DISCUSSION

The Fourth Amendment to the United States Constitution establishes the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." As the constitutional text suggests, the "touchstone of the Fourth Amendment is reasonableness."

*United States v. Knights*, 534 U.S. 112, 118 (2001). The Fourth Amendment protects a person in his home and on the street, in his room and in his car. It protects people, not places. *Katz v. United States*, 389 U.S. 347, 350-51 (1967); *see also Terry v. Ohio*, 392 U.S. 1, 8-9 (1968).

A traffic stop by law enforcement, even when brief, constitutes a seizure of a person within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). It must then be reasonable. *See id.* at 810. Evidence obtained from an unreasonable search or seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). The government bears the burden of proving by a preponderance of the evidence that a warrantless stop such as this one complied with the Fourth Amendment. *United States v. Peters*, 743 F.3d 1113, 1116 (7th Cir. 2014). The government has met its burden in this case.

    A.    *Law Enforcement Had Probable Cause to Stop the Truck.*

A law enforcement officer's decision to stop an automobile is reasonable when he has probable cause to believe that a traffic violation has occurred. *Whren*, 517 U.S. at 809-10. "Probable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.'" *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (quoting *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)). It matters not whether a traffic offense actually occurred; the court only inquires whether the officer had probable cause to believe one occurred.[1] *See id.*

Even minor traffic violations can provide law enforcement officers probable cause to stop a vehicle. *See United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (following a vehicle too closely); *Muriel*, 418 F.3d at 724 (same); *Cashman*, 216 F.3d at 586 (driving with cracked windshield); *United States v. Smith,* 668 F.3d 427, 431 (7th Cir. 2012) (failing to signal for a turn); *United States v. Smith*, 80

---

[1] Even when no probable cause exists, an officer may initiate an investigatory traffic stop when he has reasonable suspicion that a crime is about to be, or has been, committed. *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006).

F.3d 215, 219 (7th Cir. 1996) (straddling lanes and failing to signal before a turn, and driving with cracked windshield); *United States v. Cannon*, 2020 U.S. Dist. LEXIS 218957, 6-7 (N.D. Ind. Nov. 23, 2020) (failing to activate a turn signal at least 200 feet before turning); *United States v. Pina*, 2020 U.S. Dist. LEXIS 206115, 6-7 (N.D. Ind. Nov. 4, 2020) (failing to signal before changing lanes); *United States v. Sanders*, 2020 U.S. Dist. LEXIS 183073, 6-7 (N.D. Ind. Oct. 2, 2020) (failing to make a complete stop and illegal window tinting). Speeding can create probable cause for a stop. *See Tapley v. Chambers*, 840 F.3d 370, 377 (7th Cir. 2016) (speeding); *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995) (speeding).

Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "does not require an actual showing of criminal activity, or even that the existence of criminal activity is more likely true than not." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (quotations omitted). By definition, probable cause looks to probabilities—"examining the totality of the circumstances in a common sense manner," *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003), and the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)). Probable cause is determined by reasonable conclusions drawn from the facts known to the officer at the time of the search or arrest. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). A law enforcement officer may act based on firsthand observations. *United States v. Williams*, 627 F.3d 247, 252-53 (7th Cir. 2010).

In light of the facts known to Officer Smith and the totality of the circumstances, it was reasonable for him to believe that Mr. Hahn was speeding and later that the truck should be searched for illegal marijuana. Officer Smith was a credible witness. Though at times in dark or dimly lit areas, he observed the truck for approximately a mile. His front-facing radar was calibrated that evening and rechecked over the course of his shift at least a handful of times. The radar clocked Mr. Hahn speeding.

Officer Smith reasonably believed that Mr. Hahn drove 48 mph in a 40-mph zone. Under Indiana law, driving faster than the speed limit is a "class C infraction," *see* Ind. Code § 9-21-5-2, so this provided probable cause for Officer Smith to initiate a traffic stop, *see Tapley*, 840 F.3d at 377.

Mr. Hahn argues that law enforcement officers may not stop drivers whose conduct is no different from any other driver's, but that's not what happened here. *See Kansas v. Glover*, 140 S.Ct. 1183, 1190 (2020) (law enforcement lack "broad and unlimited discretion" to stop drivers at random); *United States v. Flores*, 798 F.3d 645, 649 (7th Cir. 2015) ("suspicion so broad that would permit the police to stop a substantial portion of the lawfully driving public . . . is not reasonable"). In the dark of night and faced with unusual circumstances, and then later with reliable facts of a speeding violation, Officer Smith had probable cause to initiate a traffic stop.

    B.    *Ordering Mr. Hahn and His Infant Daughter from the Vehicle Wasn't Unreasonable.*

Mr. Hahn argues that Officer Smith unconstitutionally exceeded the scope of the traffic stop when he ordered Mr. Hahn and his daughter out of the vehicle. However, "[d]uring a valid traffic stop, an officer may order the driver and passengers out of the vehicle without violating the Fourth Amendment." *United States v. Tinnie,* 629 F.3d 749, 751 (7th Cir. 2011). Far from being an unconstitutional seizure, the "incremental intrusion resulting from the request to get out of the car once the vehicle [is] lawfully stopped" is "at most a mere inconvenience" or "petty indignity" as compared to legitimate concerns for the officer's safety. *Pennsylvania v. Mimms*, 434 U.S. 106, 109-11 (1977); *accord Maryland v. Wilson*, 519 U.S. 408, 412 (1997).

These safety concerns weren't absent here given the time of night, Mr. Hahn's decision to pull into a driveway and promptly open his door, the smell of marijuana, and later the loaded pistol on his hip. Mr. Hahn initially chose not to stop when Officer Smith activated his lights, traveling 200-300 yards more before pulling into the driveway. A driveway may seem safer to the driver than a dark two-lane roadway at near 3:00 a.m., but it confronts an officer with an uncertain and potentially riskier

5

situation. Once Officer Smith smelled marijuana and Mr. Hahn admitted to having a pipe, law enforcement also had probable cause to search the truck. *See United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008). Neither Mr. Hahn nor his infant daughter could remain in the truck during such a search. For any number of reasons under the law then, Officer Smith acted reasonably in ordering Mr. Hahn and his infant daughter to exit the truck and in discovering the loaded firearm in plain view less than two minutes into the stop when Mr. Hahn got out.

## CONCLUSION

The Fourth Amendment prohibits unreasonable searches and seizures, not good police work justified by probable cause. Law enforcement in this case had probable cause to initiate a traffic stop and acted reasonably in ordering Brandon Hahn (and his daughter) from the vehicle. Accordingly, the court DENIES Mr. Hahn's motion to suppress [ECF 16].

SO ORDERED.

May 10, 2021                                                *s/ Damon R. Leichty*
                                                            Judge, United States District Court